UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| JOYCE REGINA COMBS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:17-cv-68-JMH |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| NANCY A. BERRYHILL, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**\*\*\*\***

Plaintiff Joyce Regina Combs brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

I.

In determining disability, an Administrative Law Judge ("ALJ") uses a five step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the

1

burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

II.

Plaintiff filed applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") alleging disability as of November 1, 2011. [TR 282-89]. Plaintiff's claims were initially denied and denied again on reconsideration. [TR 150-52, 174-75, 176-97]. Plaintiff then requested a hearing on the matter, which was held November 10, 2015. [TR 101-33]. ALJ Don Paris held the hearing and issued a written decision denying Plaintiff's claims on January 22, 2016. [TR 67-87]. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review of the ALJ ruling on January 25, 2017. [TR 1-6]. This appeal followed pursuant to 42 U.S.C. § 405(g). Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 11, 13].

Combs was 41 years old when she filed for benefits and claimed disability since November 2011 when she was 37 years old. [TR 81]. Combs estimates her height and weight at 5'3 and 263 pounds. [TR 107] She obtained her GED and is able to read, write, and do

simple math. [TR 108]. Plaintiff worked as a legal secretary for more than three years and her most recent work was as a caseworker at the Child Support Office. [*Id*.]. She also previously worked as a cashier and in various positions at restaurants. [TR 109]. Plaintiff alleges she is unable to work due to a range of physical impairments. [TR 102].

At the hearing in front of the ALJ, Combs testified about her medical history and conditions. She alleges she suffers from osteoarthritis, a joint effusion, bone spurs, diarrhea, COPD, masses in her genitalia, Lichen Planus on her hands, feet, and genitalia, nasal tumors, anxiety, and sharp pain in her back, legs, and foot. [TR 108-120].

Combs testified that her medical problems restrict her ability to move for extended periods. [TR 117]. She claims to have trouble bending or squatting. She cannot walk for more than a short time and has pain in her wrists. [TR 117-18]. The pain in her hands makes it difficult to hold anything when cooking and cleaning. [TR 128]. Combs also claims to sleep only four to five hours per night, as she frequently has bowel movements. [TR 120]. Plaintiff states that her bowel problems can cause her to use the restroom up to twenty times per day, and sometimes she does not even know when it occurs. [TR 128-29]. She testified she keeps a commode next to her bed. Combs has taken a variety of medicine

3

for pain, arthritis, anxiety, and depression; she also requires oxygen to treat her COPD. [TR 112-19].

As far back as 1986, Combs sought treatment at Mountain Comprehensive Care ("MCC") for a range of symptoms including a cough, skin problems, headaches, shortness of breath, and back and hip pain. [TR 407-508]. In 2009, Combs was diagnosed with degenerative disc disease and acute anxiety. [TR 428, 432]. Plaintiff also went to MCC seeking treatment for a cough in August 2011 and was diagnosed with acute bronchitis with wheezing—shortly before she allegedly became disabled. [TR 410-12]. Her next treatment came eleven months later, in July 2012, when visited primary care provider Dr. Frank Mongiardo for sinus problems. [TR 512-13]. Dr. Mongiardo told Combs she had a tumor in her sinuses. Dr. Mongiardo later conducted a CT scan, which showed a mucus retention cyst. [TR 510]. A spirometry test indicated a mild breathing restriction. [TR 511]. Dr. Mongiardo diagnosed Combs with chromic sinusitis, facial pain, dyspnea, and wheezing. [TR 515].

By mid-2013, Combs started visiting Ace Clinique of Medicine where she continued to go through 2015 for treatment of pain in her shoulder, hip, back, neck, and abdominal, as well as heartburn. [TR 533-59, 568-71, 574-79]. A June 2013 MRI showed mild osteoarthritis in both hips, minimal right-sided joint effusion,

and no evidence of avascular necrosis or any evidence of bursitis. [TR 550]. An echocardiography report in August 2013 indicated a small left ventricle with normal left ventricular function and estimated ejection fraction of 50 to 60 percent, as well as some diastolic dysfunction. [TR 548-59].

Combs visited the Appalachian Orthopedic and Spine Center twice in 2013 after experiencing back, leg, and hip pain. [TR 593-99]. Her weight at that time was 285 pounds and she had a body mass index ("BMI") of 50.5 kg/m2. [TR 596]. Her assessment showed osteoarthritis of the right hip, trochanteric bursitis of both hips, lumbar disc degeneration, and lumbar canal stenosis. [TR 598]. Combs went to Ballard Wright, M.D. in July 2013 and February 2014 complaining of low back pain and hip pain. [TR 526-32]. Dr. Wright found Combs suffering from degenerative spine disease, lumbar facet arthropathy, sacroiliitis, osteoarthritis, lumbar radiculopathy, chronic pain, and abdominal/pelvic pain. [TR 526-27]. Plaintiff also sought treatment from George Caney, M.D., in January and February 2014 for abdominal pain. [TR 521-25]. Plaintiff went back to MCC twice in 2015 for treatment of shortness of breath and complications from COPD. [TR 580-91]. During the June 2015 visit to MCC, doctors noted several problems including COPD, obesity, hypertension, and irritable bowel syndrome ("IBS"). [TR 583]. And during the October 2015 visit,

5

Combs's problems also included lichen planus and chronic diarrhea. [TR 605-08].

Throughout her treatment, Combs received an array of imaging and testing. A right shoulder x-ray in April 2013 showed minimal osteophyte formation at the level of the acromioclavicular joint, minimal lumbar curvature convex, minimal right-sided SI joint sclerosis, and minimal lumbar spondylosis. [TR 556]. An MRI of the right hip and pelvis in June 2013 indicated mild osteoarthritis in both hips and minimal right-sided joint effusion. [TR 550]. A transvaginal pelvic ultrasound examination in April 2013 showed a cyst near the left ovary and a uterine leiomyoma. [TR 551]. An April 2013 chest x-ray showed no acute infiltration. [TR 553]. An MRI of the lumbar spine in April 2013 found bulging discs and osteophyte formation in two locations, a minimal bulging disc in another spot, a complex cystic abnormality in the left hemipelvis, and no disc herniation. [TR 554-55]. A sleep study in April 2013 showed mild obstructive sleep apnea. [TR 509]. A spirometry report in May 2013 indicated mild restriction in airflow. [TR 519].

The record also includes medical source opinions from two state agency doctors, Allen Dawson, M.D., and Jack Reed, M.D. [TR 158, 182]. Dr. Dawson opined that Combs could (1) lift and carry up twenty pounds occasionally and ten pounds frequently (2) stand and walk for a total of six hours in a work day, (3) sit for a

total of about six hours, (4) occasionally climb ramps and stairs, stop, kneel, or crouch, (5) frequently balance, and (6) never climb ladders, ropes, or scaffolds, or crawl. [TR 158-59, 168]. Dr. Dawson further suggested Combs avoid all exposure to hazards such as machinery and heights. [TR 159]. Dr. Reed agreed. [TR 182-85].

After the hearing and considering all the evidence, ALJ Paris issued his ruling on January 22, 2106. [TR 67]. At Step One, ALJ Paris found that Plaintiff had not engaged in substantial gainful activity since November 1, 2011. [TR 72]. At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthrosis, and obesity. [*Id.*].

At Step Three, ALJ Paris determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 73]. In reaching this conclusion, ALJ Paris found that Plaintiff's evidence of chronic lower back pain with osteoarthrosis did not satisfy the criteria of Listing 1.04 because the evidence "did not show that Combs experienced a spinal disorder resulting in the compromise of a nerve root or the spinal cord, with nerve root compression, spinal arachnoiditis, or spinal stenosis with accompanying ineffective ambulation." [TR 73]. The ALJ further found that

evidence of osteoarthrosis in Plaintiff's hips and lower extremities did not satisfy Listing 1.02(A), which requires that claimant be unable to ambulate effectively due to the impairment. [*Id*.]. And evidence of osteoarthrosis in Plaintiff's upper extremities did not satisfy Listing 1.02(B), which requires that one major peripheral joint in each upper extremity be impaired to the point that a claimant no longer can perform fine and gross movements with that extremity. [*Id*.]. Finally, the ALJ noted Plaintiff's obesity, but found it did not "impose the degree of limitation necessary to meet or equal any impairment described in Appendix 1. SSR 02-p." [TR 73-74].

Before proceeding to Step Four, ALJ Paris found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(b) with the following limitations:

> The claimant can lift and carry twenty pounds occasionally, and ten pounds frequently. She can stand/walk six hours, and sit six hours, out of an eight-hour workday. She never should climb ropes, ladders or scaffolds. She occasionally can climb ramps or stairs, stoop, kneel, or crouch. She frequently can balance. She never should crawl. She should avoid all industrial hazards such as unprotected heights and dangerous machinery.

[TR 74]

The ALJ then concluded, at Step Four, that Plaintiff was able to perform past relevant work as a caseworker, a cashier, and a

8

secretary. [TR 81]. The ALJ also found that other jobs in the national economy are available that Combs could perform. [TR 81-82]. ALJ Paris based his conclusion on testimony from a vocational expert ("VE") in response to hypothetical questions assuming an individual of Plaintiff's age, education, work experience, and RFC. [TR 82]. The VE testified that such an individual could fill a job with light exertion such as a bagger (3,000 jobs in Kentucky and 150,000 nationally), assembly work (37,000 Kentucky/1,800,000 nationally), or gatekeeper (11,000 Kentucky/550,000 nationally). Thus, ALJ Paris determined Plaintiff was not disabled under the Social Security Act. [*Id.*].

Plaintiff argues that ALJ Paris erred in three ways. First, Combs contends that the ALJ failed to consider obesity in addressing RFC despite finding that obesity was a severe impairment. Second, Combs argues the ALJ should have found IBS was a severe impairment. [DE 11-1, p. 10]. Finally, Combs claims that the ALJ's decision is not supported by substantial evidence. [DE 11-1, p. 13]. Because of each of these claims is without merit, this Court affirms the Commissioner's decision.

III.

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713

(6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. We are to affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

IV.

Plaintiff attacks three aspects of the of the ALJ's decision. This Court will address each, in turn.

**A. Consideration of Obesity in Addressing RFC**

In order to determine whether Plaintiff is able to perform past relevant work, the ALJ must first "evaluat[e] the medial evidence and the claimant's testimony to form an assessment of [her] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). The RFC assessment is a determination of how the claimant's "impairments, and any related symptoms, such as pain . . . cause physical and mental limitations that affect what [he or she] can

do in a work setting." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 404.1545(a)(3).

"Social Security ruling 02-1p requires an ALJ to consider obesity at steps two through five of the sequential evaluation process used to determine if an individual is disabled." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834-35 (6th Cir. 2016) (citing SSR 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002)). SSR 02-1p requires courts to consider obesity "at all stages of the sequential evaluation," although it does "not mandate a particular mode of analysis." *Nejat v. Comm'r of Soc. Sec.* 359 F. App'x 574, 577 (6th Cir. 2009). Obesity must be considered at each stage, including the RFC, "precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (quoting SSR 02-1p, 2002 WL 34686281, at *1). "The ALJ satisfies this requirement so long as she credits 'RFCs from physicians who explicitly accounted for [the claimant's] obesity.'" *Miller*, 811

11

F.3d at 835 (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)). In other words, when the ALJ "utiliz[es] the opinions" of physicians who acknowledge the claimant's obesity, the ALJ "incorporate[s] the effect that obesity has on the claimant's ability to work into the RFC he constructed." *Coldiron*, 391 F. App'x at 443. An ALJ "does not need to make specific mention of obesity if he credits an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006).

Here, Combs argues ALJ Paris failed to adequately address obesity. Combs argues that after ALJ Paris found obesity was a severe impairment, he no longer mentioned obesity. [DE 11-1, p. 8]. ALJ Paris wrote he had "given consideration to all the forgoing factors during the sequential evaluation at Step 3, Step 4, Step 5, and has given consideration to Social Security Ruling (SSR) 02-1p, which supersedes SSR 00-3p. The Administrative Law Judge finds the claimant's obesity does not impose the degree of limitation necessary to meet or equal any impairment described in Appendix 1, SSR 02-p." [TR 73-74]. Combs argues that ALJ Paris then failed "to mention obesity again in determining Ms. Combs' RFC" despite the fact that the SSR 02-1p requires the ALJ to consider obesity at each stage. [DE 11-1, p. 9]. Combs notes that the ALJ *says* he considered obesity at every stage, but Combs claims

that is "merely lip service." [*Id*. at p. 10]. Combs argues that "just saying that the ALJ has considered her obesity at every stage doesn't give Ms. Combs her due process rights to meaningfully litigate the issue." [*Id*.].

The ALJ properly considered obesity. He references Combs's weight at least six times and her body mass index during the RFC assessment. [TR 75, 76, 77, 80]. In addition, the medical opinions on which the ALJ relied all considered Plaintiff's obesity. *See Coldiron*, 391 F. App'x at 443. The medical source opinions from Dr. Dawson and Dr. Reed on which the ALJ relied both specifically included obesity. [TR 159, 183, 194]. Combs cannot point to any medical source that opined she was more limited as a result of obesity than that what the ALJ described in the RFC. Combs does not even argue that her obesity creates any limitations that the ALJ did not address in his RFC assessment. Indeed, Combs has "failed to demonstrate how obesity interferes with her ability to work beyond the limitations set forth in the RFC." *Jordan v. Astrue*, No. 09-152-HRW, 2010 WL 227682, at *3 (E.D. Ky. Jan. 19, 2010); *see also Caldwell v. Berryhill*, No. 6:12-253-DCR, 2017 WL 957538, at *6 (E.D. Ky. Mar. 10, 2017).

The ALJ determined that despite Combs's impairments—including obesity—she maintained the ability to perform a range of light work. Because the ALJ relied upon medical evidence that considered

Combs's obesity and Combs cannot point to any limitation that obesity imposes beyond what is described in the RFC, the Court rejects Combs's argument.

**B. Irritable Bowel Syndrome as a Severe Impairment**

Combs next argues that the ALJ erred at Step Two by failing to find Combs's diagnosis of IBS as a severe impairment. [DE 11-1, p. 10]. Step Two is a threshold requirement where the ALJ determines whether the claimant has any "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). If so, the ALJ proceeds to Step Three. From there, the ALJ considers all impairments—both severe and non-severe—in determining the claimant's residual functional capacity. 20 C.F.R. § 1545(a)(2).

Here, the ALJ found Combs had three severe impairments: degenerative disc disease, osteoarthrosis, and obesity. [TR 72]. Thus, ALJ Paris moved on to Step Three. [TR 73]. At that point, it no longer mattered whether IBS was considered "severe" or not, because the ALJ considers *all* impairments, even if they are not severe. Thus, "a finding that an impairment is not severe at Step 2 does not preclude the ALJ from considering it when fashioning the RFC." *Doan v. Astrue*, No. 10-107-JBC, 2011 WL 3880488, at *2 (E.D. Ky. Aug. 31, 2011). As such, once the ALJ proceeds beyond Step Two, all impairments are taken into account, and "whether the ALJ characterized any other alleged impairment as severe or not

14

severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *see also Sharp v. Sullivan*, 907 F.2d 151, No. 89-1982, 1990 WL 93397, at *4 (6th Cir. 1990); *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Lynn v. Colvin*, No. 16-153-ART, 2016 WL 8943300, at *3 (E.D. Ky. Dec. 22, 2016). Thus, because the ALJ considers *all* impairments, including those that are non-severe, Combs's argument that IBS should have been a severe impairment is not a basis for reversing the ALJ's decision.

### C. ALJ's Decision Supported by Substantial Evidence

Finally, Combs argues that the ALJ's decision is not supported by substantial evidence as required by 42 U.S.C. §405(g). [DE 11-1, p. 13]. "Substantial evidence means more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Maziarz*, 837 F.2d at 243 (quoting *Kirk v. Sec'y of Health & Human Servs*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal quotations omitted). "So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive [judicial] review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

Combs argues that the record shows that she can "not perform a wide range of even sedentary work on a regular and sustained

15

basis." [DE 11-1, p. 13]. Combs lists her ailments and argues "there is not substantial evidence to support the denial" of benefits. [DE 11-1 p. 14]. But there is nothing else Combs offers. She simply thinks the ALJ is wrong. Combs makes no attempt to point to specific errors in the ALJ's decision. She cites no medical evidence and presents nothing to this Court that suggests she is more limited than what the ALJ determined.

Plaintiff cites *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002) for the proposition that an ALJ's decision to consider only evidence unfavorable to a claimant is improper. In the first place, this is not what *Howard* addressed. In *Howard*, the Sixth Circuit reversed the ALJ because in determining the RFC the ALJ did not consider unrebutted opinions of treating physicians. *Id.* at 240. Such medical opinions, the Circuit ruled, are entitled to complete deference. *Id*. As such, the ALJ could not overlook them in the RFC. Here, no such error occurred. Indeed, as the ALJ noted, the record "contains no opinions from treating or examining physicians indicating the claimant is disabled or has limitations greater than those determined in this decision." [TR 80]. Second, nothing suggests the ALJ considered only unfavorable evidence against Combs. To the contrary, the ALJ went through a thorough and detailed analysis of Combs's entire history.

16

Plaintiff finally cites *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004) in arguing "denial of benefits based upon an ALJ's improper calculation of the claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be reversed." *Id*. at 631. True, but nothing in this case suggests the ALJ improperly calculated Combs's RFC. The ALJ considered all of Combs's impairments and found she could perform a range of light work. [TR 74-80].

"As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman*, 693 F.3d at 714. This is true "[e]ven if the evidence could also support another conclusion." *Her*, 203 F.3d at 389-90. Here, the ALJ relied on objective evidence in going through a detailed evaluation of Combs's medical history, treatment, and impairments as well as the opinions of state agency medical consultants. In short, this Court "cannot conclude that the ALJ's decision falls below the 'mere scintilla of evidence' threshold against which we must review the Commissioner's decision." *Norris*, 433 F. App'x at 441.

V.

The Court having found no legal error on the part of the ALJ and that his decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 11] be, and the same hereby is, **DENIED**.

A separate judgment in conformity herewith shall this date be entered.

This the 16th day of February, 2018.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge